## Rogers v. Place.

VENDOR AND PURCHASER.—DEFECTIVE TITLE.—PLEADING.—Suit by A against B upon a promissory note, and a mortgage securing the same. Answer, that the note was given for a part of the price of the land described in the mortgage, purchased by B of C; that the note and mortgage were given to C, and that B did not know that A's name was inserted therein as payee and mortgagee; that C had at the time only a tax title to the land, and agreed in writing, in addition to the deed executed by him, to procure and deliver a quit claim deed from D, the real owner, who had agreed to convey to A; that A had failed to procure the promised deed from D, and that the title so to be conveyed was of greater value than the note sued on, &c.

*Held*, that the defendant was estopped to deny that the notes were made to A.

*Held*, also, that in the absence of any device to put him off his guard, a party who, having the capacity to read an instrument, signs it without reading, places himself beyond legal relief.

*Held*, also, that the answer was bad because it professed to answer the whole complaint, while the facts, if a bar to a personal judgment upon the note, constituted no defense to a foreclosure of the mortgage.

*Held*, also, that as the answer did not deny that possession followed the deed of C, it must be so construed against the pleader, and as the writing which accompanied the deed operated as an assignment of an equitable right to enforce a conveyance from D, B was secure in his possession.

*Held*, also, that as there was no averment that A had any notice of the facts pleaded, the answer was no bar to the suit.

APPEAL from the *Noble* Common Pleas.

GREGORY, C. J.—*Place* sued *Rodgers* in the court below on two notes and a mortgage. The notes are dated *June* 11, 1864, and are for $200 each, payable to the plaintiff, and due in ten and twenty-two months, respectively. The mortgage is to the plaintiff, to secure these notes. The defendant answered in three paragraphs. 1. The general denial. 2. That he bought of *Edward H. Leaming,* through *James McConnell,* as agent of *Leaming,* the land described in the mortgage, for $800. That by direction of *McConnell,* as agent of *Leaming,* he paid $400 of the price of the land to one *W. Knopenberger*; that he executed the notes and mortgage to *Leaming* for the balance of the purchase money; that at the time the notes and mortgage were signed and delivered to *Leaming,* he did not know that the plaintiff's name was in either of the notes or in the mortgage, but he supposed and believed that the name of *Leaming* was in each of them, as payee and mortgagee; that *Leaming* had at the time no title to the land, except what was derived through a sale for taxes, and that *Leaming* agreed with defendant to convey it to him by deed, and also agreed that a quit claim deed should be made therefor by one *Nelson,* the owner thereof, to the defendant, and that *Leaming* executed to defendant a writing to that effect, which is as follows: " It is hereby agreed by and between *E. H. Leaming* and *Jonathan P. Rodgers,* that a certain quit claim deed that is coming from *Isaac G. Nelson* to me, said *Leaming,* for the northwest quarter of the southwest quarter of section thirty-two, town 35 north, range eight east " (the land described in the mortgage), " shall be made to the said *Jonathan P. Rodgers.* Witness my hand, this 11th day of *June,* 1864."

(Sig'd) "*E. H. Leaming,* by *James McConnell,* agent;" that *Leaming* delivered to defendant a deed for the land; that the only consideration for the $400 paid, and the notes and mortgage, was said deed and written contract; that no deed has been made to him from *Nelson,* although a reasonable time therefor has elapsed; that the title to be conveyed to him by the quit claim deed from *Nelson* is of greater value than the amount of the notes and mortgage. Wherefore defendant saith that the consideration of the notes and mortgage has wholly failed. 3. That the consideration of the notes and mortgage has wholly failed; that defendant paid to *E. H. Leaming* $400, and executed to him the notes and mortgage, as and for the price of forty acres of land; that *Leaming* executed to defendant a deed for the land, and by his agreement in writing, set forth above, agreed that *Isaac G. Nelson,* the owner of the land, should, within a reasonable time, execute a quit claim deed therefor to defendant; that the deed so delivered to him, and the written contract, were the sole consideration for the $400, and the notes and mortgage; that defendant executed the notes and mortgage to *Leaming,* and not to the plaintiff, and that no deed has been delivered to defendant from *Nelson;* that the deed to be delivered from *Nelson* was and is of greater value than the amount of the notes and mortgage.

The court below sustained separate demurrers to the second and third paragraphs of the answer, and this is assigned for error in this court. The mortgage, as well as the notes, were made to the appellee. The appellant is estopped thereby from saying that they were made to *Leaming* and not to *Place.* In *French et al.* v. *Blanchard,* 16 Ind. 143, the court held, in a suit for the foreclosure of a mortgage, that the defendant was estopped from setting up that the notes and mortgage, though executed to the plaintiff alone, were given for goods purchased of a mercantile firm, of which plaintiff was a member; that the other copartners had never assigned their interest in the debt to plaintiff, and that the real, beneficial interest therein was in the firm.

The allegation in the second paragraph, that the appellant did not know that the plaintiff's name was in either of the notes, or in the mortgage, but that he supposed and believed that the name of *Leaming* was in each of them, as payee and mortgagee, is not sufficient to take the case out of the rule. There is no allegation of fraud or mistake. Justice BLACKSTONE, in speaking of the reading of a deed, which is alike applicable to all written instruments, states the rule thus: " This is necessary, wherever any of the parties desire it; and if it be not done on his request, the deed is void as to him. If he can, he should read it himself; if he be blind or illiterate, another must read it to him. If it be read falsely, it will be void; at least for so much as is mis-recited." 2 Black. Com. 304. In the absence of any device to put the party off his guard, an omission to read the instrument by one having the capacity to do so, will place him beyond the protection of the law; and the maxim, *"vigilantibus, non dormientibus, jura subveniunt,"* will apply to him with all its force. Justice SULLIVAN, in *Sceright* v. *Fletcher*, 6 Blackf. 380, says: " It does not appear that the defendant was deceived by the representations made to him, or if he was, it is manifest that it was the consequence of his own folly. If the defendant were an illiterate man, and the bond had been misread to him, he not being able to detect the imposition, the case would have been different. But it appears that he signed the bond without reading it himself, or hearing it read, and, with all the means of knowing the truth in his power, reposed a blind confidence in representations not calculated to deceive a man of ordinary prudence and circumspection. In such a case, the law affords no relief." See, also, *May* v. *Johnson et al.* 3 Ind. 449.

Both paragraphs profess to answer the whole cause of action. An allegation of an entire want of title in the vendor is no defense to the foreclosure of the mortgage given to secure the purchase money. *Hubbard et ux.* v. *Chappel*, 14 Ind. 601. And if these paragraphs are to be regarded as making such an averment, then they are bad,

for the reason that they are pleaded in bar of the entire action, and not as a defense to a personal judgment on the notes.

A pleading is taken most strongly against the pleader, and the legal presumption is that possession follows a purchase, in the absence of anything showing the contrary. In the light of these rules, the paragraphs in question amount to this: That *Rodgers* purchased of *Leaming* the land embraced in the mortgage, and took from him a deed therefor, with full covenants, the possession following the purchase. That *Leaming* held the land by a defective tax title, having, however, the equitable right to a conveyance in fee therefor; by a quit-claim deed from one *Nelson,* the original owner of the land. That in addition to the deed, *Leaming* agreed with *Rodgers* that the quit-claim deed coming to the former should be made to the latter, and that it had not been done. This agreement was an assignment to *Rodgers* from *Leaming* of the equitable right of the latter to the quit-claim deed from *Nelson.* *Rodgers,* then, is in possession of the land, under a deed with full covenants from *Leaming,* with the equitable right to a quit-claim deed from *Nelson,* the original owner. This equitable title can be given in evidence under the general denial in an action to recover the possession of the land. 2 G. & H., § 596, p. 283. *Rodgers* has the covenants of *Leaming,* and he is also secure in his possession against any legal title which might have remained in *Nelson* after the tax sale. As *Rodgers* has the substance, it can hardly be said that the shadow was a condition precedent to the right of *Place* to recover the amount secured by the notes and mortgage. It will be seen that there is no averment in the answer that *Place* had any knowledge of or connection whatever with the consideration passing to *Rodgers* from *Leaming.* The legal presumption, in the absence of any allegation to the contrary, is that. *Place* parted with value for the notes made payable to him. As against *Place,* the defense set up is not sufficient to bar

the action. The court below committed no error in sustaining the demurrers.

The judgment is affirmed, with costs.

*A. Ellison,* for appellant.

*A. A. Chapin* and *W. E. Higgins,* for appellee.