### JAMES H. RUDDELL V. GEORGE FHALOR ET AL.

*Note Obtained by False Representations.*—Where the maker of a note, payable at a bank in this State, relies on the representations of strangers in the execution thereof, and the note is indorsed to an innocent purchaser for value, before maturity, the carelessness or undue confidence will preclude him from setting up the plea of artifice or fraud against the assignee. *Zook* v. *Simonson,* distinguished.

Filed April 7, 1881.

Appeal from Wells Circuit Court.

Opinion of the court by Mr. Justice Howk.

This was a suit by the appellant against the appellees upon a promissory note, of which the following is a copy:

$500.                LANCASTER TOWNSHIP, WELLS COUNTY, IND.
                                    FEBRUARY 1, 1872.

Six months after date (or before, if made of the sale of Drake's Horse Hay-fork and Hay-carrier), we promise to pay to James B. Drake, or order, five hundred dollars, payable at the First National Bank of Indianapolis, value received, with use, without any relief from valuation or appraisement laws; if suit shall be instituted to enforce the payment thereof, I agree to pay a reasonable attorney's fee.

[Signed,]         GEORGE AND JOHN FHALOR,
                          SOLOMON FHALOR.

[Witness,]     CHAS. GOLDEN,
                       E. W. BETTES.

[Indorsed,]       J. B. DRAKE.

September 22, 1873. For value received, being in settlement of partnership business, I hereby assign my interest in this note to James H. Ruddell, without recourse.

[Signed,] W. W. WOOLLEN, SR.

The appellees, the defendants below, were the makers of the note in suit, and it was alleged in the complaint that the note was due and unpaid.

The cause, having been put at issue, was tried by a jury, and a general verdict was returned for the appellees; and with their general verdict the jury also returned their special findings on particular questions of fact, submitted to them by the parties, under the direction of the court. Over several motions of the appellant, in reference to the answer of the jury to interrogatories, and his motion for a new trial, and his exceptions saved, the court rendered judgment on the general verdict against the appellant for the appellees' costs.

In this court the following decisions of the circuit court have been assigned by the appellant as errors:

1. In overruling his demurrer to the second paragraph of the appellee's answer; and

2. In overruling his motion for a new trial.

The questions, arising under these alleged errors, we will consider and decide in the order of their assignment.

Before, however, we enter upon the consideration of any question presented by the record of this cause, it is due to the learned judge of the trial court, that we should note the fact that the decisions below have not been sustained in this court by the appellees' counsel by any brief, argument or citation of authorities. So that, if we should arrive at a different conclusion from that of the circuit court upon the questions presented for decision, it may properly be attributed to some extent, at least, to the neglect of the appellees in abandoning the case on and after its appeal, and in failing to inform us of the grounds of the rulings in their favor, and to sustain those rulings by argument and authority.

1. In the second paragraph of their answer, the appellees alleged in substance, that, on the 1st day of February, 1872, two persons then to appellees entirely unknown, appeared at the appellees' residence, one of them calling himself James B. Drake, and represent-

ing himself to be the patentee of a machine or contrivance, called
"Drake's Horse Hay-fork and Hay-carrier," and the other calling
himself Charles Golden; that the said persons then and there pro-
posed and offered to appoint the appellees, George and John Fhalor,
their agents to sell said contrivance; that during the negotiations
relating to such contract, nothing was said between said parties
about a note, or the execution of a promissory note, by the appel-
lees to said Drake, or to any other person; that when said George
and John should accept such agency, they were to sell said ma-
chines, and account to said Drake, and were to divide the profits
with said Drake; that they were not called on or asked to sign any
note or other obligation to pay money; that no note or obligation
was either read or shown to the appellees, and if they signed the
note in suit, or other obligation to payment, they did so without
knowing it, and if so, the said note, by the artifice and trickery of
said Drake and Golden, was so hidden and disguised, as that they
could not discover or prevent it, by the use of due diligence.   Appel-
lee, Solomon, said that he was a Pennsylvanian by birth, and was
educated in the German language and did not well understand the
English language when spoken, and could not read the English
language, and did not, and could not, read the agreement mentioned;
that said Drake pretended to read said agreement to him, but that,
as he afterwards learned, he did not read it correctly; that in so
reading, or pretending to read, the same, he did not read of any
note, or of any reference to a note or obligation to pay money, and
the appellee, Solomon, did not know that said agreement made any
mention or reference to a note till long after said note was in the
appellant's hands; and that by the blandishments, flattery and per-
suasion of said Drake and Golden, and their representations that
large profits could be made, said George and John were induced to
accept the appointment of such agents, and then and there, upon
the request of said Drake and Golden, said George and John signed
a paper, called an "agreement," accepting such agency, and on re-
quest said Solomon then signed said "agreement," as witness thereto
and for no other purpose, which paper the appellees were to, and
did, keep and retain.

And the appellees said, that said Golden and Drake represented
to them, that it would be necessary, right and proper for the appel-

lees to sign said agreement in duplicate, that was, they should sign another paper just like the one they were to and did keep, in order, as said Drake and Golden represented, that they might have a copy to keep; that the appellees did put their names to another paper, which, they in good faith believed, was an exact copy of the agreement they were to keep, and nothing else; that the appellees then (at the time of filing their answer,) feared and believed that, instead of having signed a copy of said agreement, they had, through the artifice, fraud and trickery of said Drake and Golden, put their names to the note in suit; but the appellees said that, if they did sign said note, they did so unwittingly, without intending so to do, and were so procured so to do by said artifice, fraud and trickery, so adroitly done and performed by said Drake and Golden, that the appellees could not detect or know it; and that, if they did so sign said note, they never, at any time, delivered the note sued upon, to said Drake and Golden, or to any other person or persons. Wherefore, etc.

We are of the opinion, that the facts stated in this second paragraph of answer were not sufficient to constitute a defense to the appellant's action, and that the court clearly erred in overruling his demurrer to said paragraph. The note in suit was payable at a bank in this State, and was therefore negotiable as an inland bill of exchange. The appellant was the owner and holder of the note, as the indorsee thereof before maturity, for value and without notice. Under the law merchant, which governs the negotiability of inland bills of exchange, and fixes and determines the rights and liabilities of the parties thereto, there can be no doubt, we think, that the appellant, as the indorsee of the note sued upon for value before maturity and without notice, took such note free from all the equities and defenses, which might have existed as between the appellees, as the makers, and the said James B. Drake, as the payee of the said note. It was not alleged in said second paragraph of answer, that the appellant, at the time he became the owner, as indorsee of said note, had notice of any of the facts set forth in said paragraph as a defense to this action. Possibly, the facts stated by the appellees in said paragraph of answer, would have constituted a good defense in their behalf if suit had been brought against them, on the note by James B. Drake, the payee thereof; but,

however this might have been, it is very certain, as it seems to us, that those facts were not sufficient to constitute a valid defense in appellees' favor, to the suit of the appellant, on said note, as the indorsee thereof. *Murphy* v. *Lucas*, 58 Ind. 360; *Cornell* v. *Nebeker*, 58 Ind. 425; *Bremmerman* v. *Jennings*, 61 Ind. 334; *Maxwell* v. *Morehart*, 66 Ind. 301; *First National Bank of Lawrenceburgh* v. *Lotton*, 67 Ind. 256; *Indiana National Bank* v. *Weckerly*, 67 Ind. 345; *Marshall* v. *Drescher*, 68 Ind. 359; *McCoy* v. *Lockwood*, decided at this term; *Zook* v. *Simonson*, decided at this term.

It will be seen from the summary we have given of the facts alleged in the second paragraph of answer, that an effort was probably made to show thereby that the note in suit had been obtained from the appellees without fault or negligence on their part, by and through the artifice, fraud and trickery of Drake, the payee of the note. But we think that the paragraph wholly fails to state or show any such case. The paragraph was the joint answer of the three makers of the note sued on, and while it was alleged that one of the makers had been educated in German and could not read the English language, yet it may be fairly inferred from the silence of the paragraph on the subject that the other two makers of the note had been educated in English, and could readily read the English language. It seems to us that the appellees were grossly negligent in confiding in " the blandishments, flattery and persuasion of said Drake and Golden," who were " entirely unknown " to the appellees; and it may be fairly inferred from the allegations of said paragraph of answer, that they, the appellees, were probably induced to sign the papers presented to them by said Drake and Golden without proper caution, as much or more by " their representation that large profits could be made," as by their " artifice, fraud and trickery." The case of *Nebeker* v. *Cutsinger*, 48 Ind. 436, is in point. In that case, it appeared that the maker of a note, payable at a bank in this State, had been induced by the fraud and trickery of the payee to sign his name to such note, when he, in good faith, believed that he was executing a paper of an entirely different kind, and had no intention to sign a note; and it was held that the maker of the note was liable to a *bona fide* indorsee thereof for value, if such maker was guilty of negligence in failing to use reasonable care to inform himself of the contents

of the paper so signed by him. In such a case as the one at bar, we think the true doctrine is, that the makers of such a note as the one in suit, who, by their carelessness or undue confidence, have enabled another to obtain the money of an innocent person, should answer the loss they have occasioned.

Upon the allegations of the second paragraph of the appellees' answer, which, no doubt, stated their defense in its strongest and most favorable light, we are of the opinion that the note in suit was obtained from them, by and through their gross carelessness and undue confidence in strangers; that they thereby put it in the power of Drake, the payee of the note, on the faith of their names and credit, to obtain the money of innocent persons; and that, as between them and the indorsers of their note before maturity, for value and without notice, they should be required to answer and bear the loss occasioned, or materially contributed to, by their own folly and negligence. The appellant's demurrer to the second paragraph of answer ought to have been sustained, and to overrule it, as the court did, was clearly such error, we think, as requires the reversal of the judgment.

Our conclusion, in regard to the insufficiency of this second paragraph of answer, renders it unnecessary for us to consider now the questions arising under the alleged error of the court, in overruling the motion for a new trial. The evidence is in the record, and, without considering it at length, we may properly say that, in our opinion, it utterly fails to sustain the general verdict of the jury; and for this cause a new trial ought to have been granted. We need hardly say, we think, that the point in judgment, in the case of *Zook* v. *Simonson, supra,* is not involved in or presented by the record of this cause.

The judgment is reversed, at the appellees' costs, and the cause is remanded, with instructions to sustain the demurrer to the amended second (third?) paragraph of answer, and for further proceedings not inconsistent with this opinion.

W. W. Woollen, for appellant.