HOPKINS v. THE HAWKEYE INSURANCE Co.

1. **Promissory Note:** SIGNING: NEGLIGENCE.  What constitutes reasonable care and diligence in the execution of an instrument is ordinarily a question of fact for the jury.  Where a party trusts to the agent of the payee to read a note correctly, without calling upon a member of his family to read it for him before signing, it is not, as a matter of law, negligence.

2. ———: AGENT: FRAUD.  The fraudulent acts of an agent, committed in the direct line of his employment, will render the principal liable.

3. ———: PAROL PROOF.  It is competent to show by parol, that because of the fraud of a party to an instrument, it does not express the real agreement.

4. ———: DEFENSE: RECOVERY.  Whatever the defense relied upon, the plaintiff cannot recover more than, by his own showing, he is entitled to.

*Appeal from Hardin Circuit Court.*

TUESDAY, DECEMBER 6.

THIS is an action upon a policy of insurance to recover the value of a dwelling house and its contents insured by the defendant for a term of five years from the 7th day of May, 1878, and destroyed by fire on the 8th day of April, 1879.  The plaintiff alleges that as the assured under said policy he has in all things performed his agreement with the defendant. The answer admits the issuance of the policy and the destruction of the building, but alleges that the entire premium for the issuance of said policy was two promissory notes, one for the sum of $20, due January 1, 1879, and one for the sum of $10.80, due November 1, 1879; that the note payable January 1, 1879, was overdue and unpaid when the loss occurred, whereby a breach of the plaintiff's contract was committed, and the policy was rendered void.  The plaintiff for reply admits that he executed two promissory notes of the amounts alleged for the premium on said policy, and that neither of said notes had been paid when the loss occurred.  The plaintiff al-

leges that it was agreed between him and the defendant's agent, at the time the insurance was effected, that the note for $20 should become due on the first day of June, 1879, that the defendant's agent prepared the note and read it to the plaintiff as payable on the first day of June, 1879; that the plaintiff relied upon the defendant's agent to fill out the note in accordance with the agreement, and that his signature was obtained to said note by the mistake or fraud of the defendant's agent in drawing the note as due January 1, 1879, and reading it to plaintiff as due June 1, 1879. The trial was to a jury and resulted in a verdict and judgment for the plaintiff for $1,158.27. The defendant appeals.

*Porter & Moir*, for the appellant.

*Huff & Reed*, for the appellee.

DAY, J.—I. The policy sued upon contains the following condition: "That no insurance, whether original or continued, shall be binding until the actual payment of the premium, either in cash or note given therefor. When a note or notes has been received, in whole or in part, for the premium named in this policy, or any renewal of the same, and the assured or his assigns fail to pay the same, or any installment, or any part thereof, at the time or times specified in said note, such failure shall immediately terminate all liability of this company under this policy. And the company shall not in any case be liable for any loss or damage that may occur at a time when any such note or notes, or any installment therein, or any part thereof, shall be overdue and unpaid. If such note or notes, or installment, is voluntarily paid within sixty days after maturity and before suit is brought, then the policy will come in force again at the date of such payment (provided that the company will not be liable for any loss or damage that may occur while such note or notes were thus overdue and unpaid), but if said note or notes, or any installment are

not then voluntarily paid within sixty days after maturity, then all notes and installments given for such premium, or any part thereof, shall immediately become due and payable and bear interest at the rate of ten per cent from that date." The plaintiff paid no cash premium at the time the insurance was effected. The note for $20 is by its terms due on the first day of January, 1879. It had not been paid when the loss occurred, April 8, 1879, and was, therefore, by its terms, more than three months over-due.

The plaintiff testified as follows: "Mr. H. H. Clark came to my house and wanted to insure it, and he offered to insure it and take my note for one year. This was on the 7th day of May, 1878, and after talking some time I agreed to insure the house with him. He said they always wrote their notes payable on the first day of some month, and he should write the notes payable the first day of June, 1879. A few days before that I was in town and lost my spectacles, and Mr. Clark read the note to me, and he read it due the first day of June, and I did not notice it; didn't think there was any catch to it, and after he read the notes payable at Des Moines, I asked him how I should pay them, and he said I shouldn't trouble my head about it; that they would send me a notice before how I should send the money." Upon cross-examination the witness stated: "I signed the application at home; my wife and son were present when I signed it. My son was nineteen years old last December, and he is present as a witness in this case. My wife has never used spectacles until within a year. She could read writing and printing in April, 1878, without spectacles."

Mrs. O. W. Hopkins, the wife of plaintiff testified as follows: Mr. Clark, the agent, was to take a note, and the note was written May 7, payable the 1st day of June, 1879. He so read it It was to be made payable the 1st day of June, 1879. That was the talk before the note was executed. Neither of us read the note. Mr. Clark read the note. We put confidence in

him. He held it in his hand and put it in his pocket. He was a friend of ours and neither of us looked at it. My husband could not read without glasses, and he had lost his."

Herbert Hopkins testified as follows: " I am a son of plaintiff. I was at home May 7, 1878, and remember about Mr. Clark, agent of the Hawkeye Insurance Company, being there. Was there when the notes and application were signed, and heard them read to my father, and heard a conversation between the agent and father as to when the $20 note should mature."

Q. What was said between the parties as to when that note was to mature?

A. The 1st of June, 1879.

Q. How was it read as to the time it matured?

A. First of June, 1879.

Upon cross examination the witness testified as follows:

Q. You could read printing and writing readily at that time?

A. I certainly could.

Q. Did your father ask you to read these notes or either of them?

A. No sir, he did not.

The defendant asked the court to instruct the jury as follows: " It was the duty of the plaintiff, O. W. Hopkins, to have read 1. PROMISSORY the notes and application signed by him on the NOTE : sign- 7th day of May, 1878, and if he was unable to do ing : negli- gence. so because of having lost his spectacles, then he should have requested his wife or son to have read the same in his hearing, if they were present at the time, and if he failed to exercise such degree of diligence as above indicated, he was guilty of negligence, and is estopped to controvert the terms and conditions of said note and application in this action." The refusal to give this instruction is assigned as error. It is to be observed that the question as to the alleged fraud in procuring the note arises in this case between the original parties to it, and not between the maker and a *bona fide* indorsee for

value.  In the case *Rogers v. Place*, 29 Ind., 577, it was held that "In the absence of any device to put the party off his guard, an omission to read the instrument by one having the capacity to do so, will place him beyond the protection of the law."  To the same effect see the case *Lubright v. Fletcher*, 6 Blackford, 380; *Nebeker v. Cutsinger*, 48 Ind., 436; *McCormack v. Molburg*, 43 Iowa, 561.  It is incumbent upon the party executing an instrument to exercise reasonable care and diligence to ascertain its contents.  Ordinarily, however, what constitutes reasonable care and diligence is a question of fact, to be determined by the jury in view of all the circumstances. In this case the plaintiff was unable to read the note on account of the absence of his spectacles.  Whether he was justified in relying upon the reading of the agent, and in neglecting to call upon his wife or son who were present, constitutes not a question of law but one of fact.  The question is "did he act as persons of reasonable and ordinary care would usually do under like circumstances?"  If he did he was not negligent.  The evidence shows that the plaintiff had known Clark, the agent, for years, and had confidence in him.  Whether he should have indicated the lack of confidence in Clark, which would have been implied in his calling upon his wife or son, was for the jury to determine.  It cannot be declared that, as a matter of law he was negligent in not doing so.  This case is very like *Griffith v. Kellogg*, except that in that case the action was brought by an assignee for value.  In that case the defendant's signature was procured to a note for the sum of $76.25, which was read by the agent procuring it as for $47.50.  The defendant was unable to read the note without her glasses, which were at a neighbor's.  Two of the defendant's children were present who could read writing, but she did not ask them to read the note before she signed it.  Judgment was rendered for the defendant in the court below, which, upon appeal, was affirmed.  The court say: Whether the respondent, being un-

able to read the paper which she signed, was guilty of negli-
gence to estop her from setting up this defense against a *bona
fide* purchaser, was fairly submitted to the jury, and answered
by their verdict for her. The jury who gave the verdict and
the learned judge of the court below who refused a new trial,
saw and heard the respondent and her children testify, and
were better able to judge than we are whether her not appeal-
ing to her children for assistance was negligence under the cir-
cumstances." See also *Taylor v. Atchison*, 54 Ill., 196; *Walker
v. Ebert*, 29 Wis., 194. In our opinion the court did not err
in refusing to give this instruction. The court correctly in-
structed the jury that whether the plaintiff was justified in
trusting the agent to read the note correctly before signing it,
or should have called upon the members of his family then
present to read it for him, was a question of fact for them to
determine from all the circumstances, and that he was required
to do as a man of reasonable prudence would have done under
like circumstances. This instruction properly presents the law
upon this question.

II. It is urged by the appellant that it is not liable for the
fraudulent acts of the agent. In taking the application the
agent had authority to accept a note for the pre-
mium. He had authority to take a note payable on
the first day of June as well as upon the first day of January.
What he did in regard to taking the note was in the direct
line of his employment, and his acts in regard thereto must
be considered as the acts of his principal. The case differs
from *Gokey v. Knapp*, 44 Iowa, 32, cited and relied upon by
appellant. The act of the agent in that case was outside of the
general scope and purpose of his employment.

2. ——;
agent: fraud:

III. It is claimed that the court erred in admitting parol
evidence of the terms of the contract entered into between the
plaintiff and the defendant's agent. It is insisted
that such evidence tends to contradict the note and
the policy. But it is competent to show by parol that because

3. ——;
parol proof:

of the fraud of a party to an instrument it does not express the real agreement.

IV. The court instructed the jury as follows: "If the plaintiff is entitled to recover, the cash value of the property 4. ———: de- destroyed, at the time of the fire, is to be estimated fense : recov- ery. and you will estimate the value of each class separately. The sum of three-fourths of these valuations will be the plaintiff's damages." The giving of this instruction is assigned as error. The policy sued upon, contains the following provisions: "In case any of the property covered by this policy shall have any liens or incumbrances thereon, either by mortgage or otherwise, the company will not insure or pay, in any event, to exceed two-thirds of the amount of the interest of the assured in such property and such interest is declared to be the difference between the actual cash value of such property, and the aggregate amount of such liens and incumbrances, principal and interest." The application introduced by the defendant, shows that at the time the application was made there was a mortgage of four hundred dollars upon the property. The appellee insists, how ever, that this defense is not available to the appellant, because the only defense relied upon in the answer is that the plaint iff failed to pay the premium note at maturity and before the loss. But the policy upon which the plaintiff sued contained a provision that the application shall be deemed and taken as a part of the policy. So that the very paper upon which the plaintiff seeks to recover, has incorporated into it, by reference to the application, a statement that the property is incumbered by mortgage to the extent of four hundred dollars, a fact which the policy declares shall limit the recovery to two-thirds of the amount of the interest of the assured in the property after deducting the amount of the incumbrances. Whatever the defense, the plaintiff cannot recover more than, by his own showing, he is entitled to. The jury found specially that three-fourths the value of the dwelling house was $600, and they al-

lowed the plaintiff that sum for the house. This would make the entire value of the dwelling house $800. The amount to be allowed the plaintiff for the house should have been determined by deducting the amount of the incumbrance, $400, from the full value of the house, and taking two-thirds of the remainder, which would be $266.66⅔, or $333 33⅓ less than the jury allowed. On this sum of $333.33⅓ the jury allowed interest for nine months and ten days at six per cent, so that the plaintiff recovered $348.20 more than he was entitled to. If the plaintiff will, within thirty days of the filing of this opinion, remit $348.20 of the judgment in the court below, that judgment will be affirmed to the extent of $810.07. If the plaintiff refuse or neglect to remit as above indicated, the judgment will be

REVERSED.