STATE of Iowa, Appellee,

v.

Willie Foster SELLERS, Defendant,

and

Resolute Insurance Company, Appellant.

No. 2–57332.

Supreme Court of Iowa.

Oct. 19, 1977.

James W. Brown, Osceola, for appellant, Resolute Ins. Co.

Richard J. Murphy and James H. Cothern, Osceola, for appellee.

REES, Justice.

This is an appeal from two consolidated cases involving the same issues by the defendant, Resolute Insurance Company (hereinafter Resolute), from a judgment of the District Court of Clarke County overruling motions to quash bail bonds posted by Resolute to secure the release of defendant Sellers from custody. The defendant failed to appear in keeping with the conditions of the bonds, and the bonds were ordered forfeited and judgments rendered against Resolute as a consequence thereof. The appeal comes to us on errors stated. We find no error and affirm the trial court.

A detailed recitation of the factual background of the matter is necessary to an understanding of the issues stated in this appeal. Defendant Sellers was charged on or about February 11, 1971 in the District Court of Clarke County in cause identified as No. 1100 with the crime of possession of burglary tools in violation of § 708.7, The Code. His appearance bond was fixed in the appeal sum of $25,000, and required Sellers to appear and answer the charge on March 3, 1971. Sellers was later charged with a second offense, viz., breaking and entering in violation of § 708.8, The Code, and following the entry of his plea of not guilty his appearance bond on the second charge was fixed in the penal sum of $50,-000. The second case, in which Sellers was charged with breaking and entering, is identified in the record of the Clarke County court as cause No. 1135.

The case in which Sellers was charged with possession of burglary tools was set for trial to be held on September 20, 1971. Sellers did not then appear and the bond was ordered forfeited by the court. The breaking and entering case was set for trial finally after some continuances for October 13, 1971, on which date Sellers failed to appear and the State's motion to forfeit his appearance bond was sustained. After some desultory preliminary skirmishing, the matter reached trial and hearing to the court on Resolute's motion to quash the bonds. After an extended hearing, the court made a detailed finding, reached conclusions of law, and entered judgment against Resolute on both bonds in the penal sums of $25,000 and $50,000, respectively.

The record would indicate trial court was justified in finding the following factual situation attended: One John S. Wilson, apparently of Augusta, Georgia, appeared in the office of the clerk of court of Clarke County, representing himself to be an authorized agent of Resolute. He was accompanied by Joseph Bognanno of Des Moines, who was known by the clerk and by the county attorney to be an authorized agent for Resolute and who assisted Wilson in preparing the bonds, and represented to the clerk that the bonds were in proper form. Wilson had in his possession a supply of bond forms and documents identified as "powers of attorney" which had been issued to him by Resolute and which bore the following legend which the court concluded was ambiguous: "The liability of the company shall not exceed AGENT'S AUTHORITY ON ANY BOND SHALL NOT EX-

CEED $25,000.00". The power of attorney indicated that it was filed in Washington County, Georgia.

The court found that in respect to the $25,000 bond, in addition to the power of attorney referred to above, Wilson executed eight $3,000 and one $1,000 powers of attorney and affixed the same to the bond to support the bonds' conditions. Both bonds were signed by Sellers as principal and by Resolute Insurance Company by John S. Wilson as surety. Wilson represented that by affixing the eight $3,000 powers and one $1,000 power, the $25,000 penalty of the bond was satisfied. With respect to the $50,000 bond Wilson employed the same procedure in attaching multiple powers. He affixed eight $3,000 powers of attorney and one $1,000 power, totaling $25,000, and then affixed to the bond his $25,000 qualifying power to complete the $50,000 total.

The trial court made a finding based on the evidence before it that Wilson had never been instructed by the company with respect to the execution or issuance of bail bonds, nor had he been limited in his authority in respect to the execution of bonds. Bognanno, a registered Iowa agent for Resolute, had represented Resolute by posting a bond for Sellers on a prior occasion, was known to the Clarke County authorities, and represented that Wilson had authority to execute the bonds in question. He also assisted Wilson in the preparation of the bonds and the affixation of the multiple powers to same. The general agent under whose supervision Wilson operated, one Hoskins of Miami, testified the Wilson agency had not been audited in twelve years to his knowledge. Bognanno testified he had never been audited.

The trial court further found that Wilson had caused to be placed on each power of attorney a rubber stamp reading, "NOTICE ANY CORRESPONDENCE ON THIS BOND ADDRESSED TO A–Bonding Service, Number 19 Johnson Building, Augusta, Georgia, PH 722 3511". Such stamp was placed on each power of attorney. The court also found that the reports of Wilson as agent to Resolute were not in conformity with the company's regulations, but that such lack of conformity was either disregarded or ratified by Resolute by its failure to act.

It appeared that defendant Sellers was incarcerated in another jurisdiction at the time of the proceedings in the Clarke County court, and it was also made apparent to the court that he had escaped from custody, had been apprehended and again incarcerated in still another jurisdiction.

Based on all of the foregoing, the trial court overruled Resolute's motion to quash the bonds and ordered judgments to be entered on the forfeiture of the bonds.

The principal contention of Resolute that it is not liable on the two bonds in question in reality breaks down into six issues which appellant states for review:

(1) Trial court erred in failing to find and hold that a person dealing with an attorney in fact is placed on notice of his written, limited authority and has a duty to ascertain the extent of such authority.

(2) Trial court erred in failing to hold that an attorney in fact (Wilson) did not have implied authority beyond the terms of his written grant of authority.

(3) Trial court erred in holding there was sufficient evidence of the bonding agent's apparent authority to execute bonds beyond the limits of his qualifying power.

(4) Trial court erred in failing to hold that the bail recognizance was executed by Wilson as attorney in fact was invalid because it was beyond the territorial limits of his qualifying power.

(5) Trial court erred in failing to hold the recognizance instruments were invalid because the bonding agent Wilson was not licensed in Iowa.

(6) Trial court erred in failing to exonerate the bonds because Sellers, the principal thereon, was in custody in Alabama subject to an Iowa hold order.

I. The first issue stated for review is centered around Resolute's contention that the clerk of court to whom the bonds were presented for approval should have taken

notice of the limitations on the powers of attorney constituting Wilson as the attorney in fact for Resolute, and should have construed the limitations set forth in said powers as Resolute now insists it intended in drafting the powers.

■ It is an accepted principle of the law of agency that an attorney in fact is an agent of limited authority. *Wysong v. Automobile Underwriters*, 204 Ind. 493, 184 N.E. 783; *Barrett Co. v. Globe Indemnity Co.*, 10 N.J.Misc. 534, 159 A. 709. See also 3 Couch on Insurance 2d, § 26:70. It is also true that when a person is informed he is dealing with an attorney in fact he is under a duty to inquire into the exact authority of that agent. See cases above cited and 3 Couch on Insurance 2d, § 26:70 above. Resolute suggests that such principles required the clerk to call the company and that such a contact would have satisfied the clerk Wilson did not have the authority to execute the bonds in question.

■ However, under another principle of the law of agency with respect to insurance agents, where the limitations of the agent's power is set out in writing, there is no obligation to go beyond such writing. See 3 Couch, *supra*, § 26:71 and 3 Am. Jur.2d, Agency, § 81, at 485–486. In Am. Jur.2d at the above local citation, we find:

"If the act of an agent is one which requires authority in writing, those dealing with him are charged with notice of that fact and of any limitation or restriction on the authority of the agent contained in such written authority; a contract beyond the scope of such authority, as thus limited or restricted, is not binding on the principal."

The above cited passage from Am.Jur.2d implies that when a person deals with an attorney in fact who has written authority with limitations such party is entitled to rely on the limitations expressed in the written document and is under no duty to make further inquiry as to the scope of the agent's power. We therefore incline to the view the clerk was aware, and was required to be aware, of the limitations expressed in the documents presented by Wilson to the clerk and the clerk was not required to go further. Any ambiguity in such limitations would be construed against Resolute as the drafter of the documents. See 3 Couch on Insurance 2d, § 26:53 at 517, where the following appears:

"As an illustration, in construing a power of attorney issued by an insurance company to its agent, if there is any ambiguity or uncertainty in reference to the expressions therein contained, the court will construe them most strictly against the insurer."

■ The phraseology of the documents presented to the clerk, which Resolute contends limited the power of its attorney in fact, were patently ambiguous. The qualifying power of attorney for the $25,000 bond embraced the limitation that "single power of attorney must be attached to each bond executed." However, on the several powers of attorney which were attached to the bond, the limitation read, "Separate power of attorney must be attached to each bond and remain a permanent part of the court's record." This latter language could be construed to mean that a separate power of attorney cannot be used for two separate bonds, or, of course, could be interpreted as Resolute would have it, that a single power of attorney must be attached to each bond. Since Resolute wrote this ambiguity into its documents, we must construe the language against Resolute and hold that the clerk of the court had no knowledge of the limitation contended for by Resolute and is not bound to such a limitation. The same ambiguity existed in the powers of attorney which were appended to the $50,000 bond. However, on the latter bond the qualifying power was used in the execution thereof, together with the stacking of the regular powers of attorney as was done with the $25,000 bond. Apparently, the qualifying power of attorney, which was on file in Washington County, Georgia, originally had on its margin, "QUALIFYING POWER ONLY—NOT TO BE USED FOR EXECUTION OF ANY BOND." The quoted phrase had been clipped or cut off the margin of the qualifying power which was ap-

pended to the $50,000 bond. Resolute must be responsible for the clerk's lack of knowledge since it furnished the power to Wilson with the written limitation on the face of the instrument where it could be easily removed, which, of course, was done. In the light of such facts, and the above cited authority, we hold that the clerk was required to take notice of the limitations on the documents but was not required to inquire further into the nature of the limitations with Resolute since the limitations on the powers of attorney were embraced in the written documents prepared by Resolute. Since the limitations were ambiguous and permitted a construction which gave Wilson the power to execute the bonds in question, such construction of the documents is adopted as against the defendant's position in this case.

II. The next issue for our consideration involves the question as to whether an attorney in fact can have implied authority along with express authority contained in the grant of power of attorney. While in certain situations an attorney in fact may have implied powers, we are not prepared to hold that Wilson had such powers under these circumstances. Ordinarily, an agent has implied authority to act for his principal to accomplish the purposes of grants of express authority and may not extend actual authority unreasonably beyond the authority expressly granted. See 3 Am.Jur.2d, Agency, §§ 69, 71 at 470–474; 3 Couch on Insurance 2d, § 26:54. Clearly, Wilson performed far beyond the express authority granted to him by the defendant (Resolute). We need not consider the doctrine of implied authority in this case, and base our conclusion that Wilson's apparent or ostensible authority to utilize the powers of attorney in his hands in the manner in which he did utilize them renders Resolute liable.

III. The next issue presented for review is whether Wilson had the apparent authority to enter into the bonding contracts and to execute the bonds for and on behalf of Resolute. The question as to whether an agent has the apparent authori-

ty to act in a given case is a question of fact. *Spencer Concrete Products Co. v. City of Spencer*, 254 Iowa 87, 93, 116 N.W.2d 455. It is also clear that apparent authority must arise out of conduct or statements by the principal rather than the conduct or statements of the agent. *Mayrath Co. v. Helgeson*, 258 Iowa 543, 548, 139 N.W.2d 303, 306. *Mayrath* defines apparent authority as follows:

"Apparent authority, or ostensible authority to do such acts or to make such contracts, is that which, although not actually granted, has been knowingly permitted by the principal or which he holds the agent out as possessing."

In 3 Am.Jur.2d, Agency, § 74 at 477, the following appears:

"Stated inclusively, then, the rule is that if a principal acts or conducts his business either intentionally, or through negligence, or fails to disapprove of the agent's act or course of action so as to lead the public to believe that his agent possesses authority to act or contract in the name of the principal, such principal is bound by the acts of the agent within the scope of his apparent authority as to any person who, upon the faith of such holding out, believes, and has reasonable ground to believe, that the agent has such authority, and in good faith deals with him."

The fact that an agent has no actual authority may be immaterial in determining the insurer's liability on a contract. 16 Appleman, Insurance Law and Practice, § 8672 at 135 (1968). It is the extent of the agent's authority, not the plaintiff's knowledge of it, which is determinative. See 16 Appleman, *supra*, and see *Dickinson County v. Mississippi Valley Insurance Co.*, 41 Iowa 286 (1875).

The apparent authority of Wilson in this case, in our judgment, arose from the defendant's negligence in the drafting of the ambiguous limitations of its power of attorney, the lack of instruction to Wilson as to the manner in which the powers of attorney could be employed, and the lack of

supervision of Wilson as its agent or attorney in fact. As discussed above, the powers of attorney were drafted containing ambiguous phraseology so that the officials in this case, the clerk of court and prosecutor, were justified in assuming Wilson had the power to execute the bonds. The fact that the limitations on the use of the qualifying power of attorney could be and was in this case removed by cutting the restrictive provisions off the margin is also significant. Resolute did not make any provision in the documents stating where an official could contact the company if any question about the authority of Wilson arose, and such omission permitted Wilson to insert his own provision in the document directing questions regarding the bonds be submitted to him at his Augusta, Georgia, office. Because of Resolute's derelictions in the foregoing regards, it is responsible for any reliance by a third party on the documents presented to the clerk and the officials were justified in relying on the provisions stamped on the documents by Wilson and on his statements made on the authority of such provisions. As the result of both the affirmative acts and the negligent conduct of the defendant in drafting the documents and permitting the same to come into the hands of Wilson, Resolute must bear the risk of loss in this case.

It also appears Resolute was negligent in supervising its agents on the use of their powers. According to the witness Bognanno, a qualified agent, Resolute did not instruct him on the use of the multiple powers of attorney on one bond which it now contends is a practice not permitted. Mr. Hoskins, the agent for Resolute in Florida and Georgia, and the supervisor of Wilson, furnished Wilson with the books of powers of attorney, but gave him only oral and no written or formalized instructions on the use of the powers in executing bonds.

Neither did Resolute maintain proper supervision over its agents. According to Bognanno, he was never audited during his service as an agent for Resolute, and it is also apparent from the record that Wilson's agency was never audited during his association with Resolute. In addition, it appears Resolute accepted the reports of the execution of bonds by Wilson without the reports being in proper form, that is to say, without being a carbon copy of the executed power of attorney, which was required by defendant, but were instead submitted in ink. The furnishing of such reports of execution of bonds in such form and manner should have alerted Resolute to investigate, and the company must be responsible for the consequences of its failure to do so.

There are indications in the record that Wilson committed a fraud against Resolute as well as against the state in the execution of the bonds in question and of the reports sent back to Resolute as to the use of the powers of attorney attached to the bonds. A fraud committed by an agent on the state as a third party does not relieve the defendant of liability for acts committed within the agent's apparent authority as in this case. See *Turner v. Zip Motors, Inc.*, 245 Iowa 1091, 65 N.W.2d 427 and *Hopkins v. Hawkeye Ins. Co.*, 57 Iowa 203, 10 N.W. 605. A fraud committed on the principal does not relieve it for acts done under the agent's apparent authority, especially when the commission of the fraud was the result of defendant's negligence in supervising its agents. See *Ricketts v. Pennsylvania R.R. Co.*, 153 F.2d 757 (2d Cir. 1946). See also Restatement (Second) of Agency § 262.

There was every appearance of authority on the part of Wilson to execute the bonds in question on which the court clerk relied in accepting the bonds for filing. As a consequence, this is a clear case in which the clerk was justified in relying on Wilson's apparent authority and, in our judgment, exposes Resolute to liability for the acts of its agent and for the judgment rendered on the forfeiture of the bonds.

IV. Resolute next asserts it should not be bound by the documents executed by Wilson since there was language on the qualifying powers of attorney which it insists placed territorial limits on the exercise of Wilson's agency powers.

The qualifying power of attorney which was attached to the $50,000 bond and from which Wilson had removed the phrase referred to above, contained a provision evidencing the fact that Resolute had appointed Wilson its attorney in fact at or in Augusta, Georgia, and the additional phrase, "THIS POWER CANNOT BE FILED WITHOUT PROOF OF VALID INSURANCE LICENSE ISSUED BY GEORGIA INSURANCE DEPARTMENT." Resolute contends the above provision put the clerk of court on notice that Wilson's powers as an attorney in fact were limited to Augusta, Georgia, and that he had no power to obligate Resolute or to act for it beyond such territorial limits.

■ Here again we are faced with a limitation that is ambiguous. The language above quoted could refer only to the place of appointment and have nothing to do with the territorial limits on the agency granted to Wilson by Resolute. Other language in the qualifying power provided Wilson had full power and authority "in writing bail bonds, in judicial proceedings, whether criminal or civil; supersedeas bonds, peace bonds, appeal bonds, or any other kind of appearance bond in any State Court, County Court or Municipal Court * * *."

In the light of the foregoing language, the territorial limits which Resolute contends were placed on the actions of Wilson are clearly ambiguous and did not give the clerk of court in this case notice to question the apparent authority which Wilson had. Our discussion of the first issue as presented for review in Division I above is applicable to this issue, and we need not belabor the question further.

V. Resolute further contends it is not liable on the forfeiture of the two bonds in question since the bonds were executed by an agent who was not licensed by the State of Iowa, in violation of §§ 515.52 and 522.1, The Code. Resolute claims that since the bonds were executed in violation of the above sections, it should not be liable on them. Conversely, the State claims the above cited statutory provisions are for the protection of the insured, or obligee on the bonds, and not for the insurer or principal, and that Resolute cannot relieve itself of liability by reliance on such statutes.

Section 515.52 provides:

"No insurance company shall write, issue, or place, or cause to be written, issued, or placed any policy or contract of insurance or endorsement thereto, covering the risk on any property, insurable business activity, or interest, located within, or transacted within this state, including any contract of indemnity or suretyship, except through or by a duly licensed agent of such company, residing within this state, who shall before delivery, countersign said policy or contract of insurance or endorsement thereto. No such resident agent shall countersign such policies, contracts of insurance or endorsements in blank."

Section 522.1, The Code, provides:

"No person shall directly or indirectly, act within this state as agent, or otherwise, in receiving or procuring applications for insurance, or in doing or transacting any kind of insurance business for any company or association unless exempt from the provisions of this chapter by reason of section 512.33, * * * until he has procured from the commissioner of insurance a license authorizing him to act for such company or association as agent."

■ In *State v. Emily*, 24 Iowa 24 (1867), we held a surety bond valid and the surety liable thereon even though the bond was not proven to have been executed by a resident agent as required by Iowa law at that time. *Emily* is analogous to the situation in the present dispute where the bond is executed by defendant's agent who was neither a resident or licensed in this state and therefore the bonds were executed in apparent violation of §§ 515.52 and 522.1, The Code. It is clear to us such statutory provisions are for the protection of the insured (or, in this case, the obligee on the bonds) and are not to be used by the insurer or principal to avoid its obligations on any surety or insurance contract.

3 Couch on Insurance 2d, § 26:56, fortifies this position, and states:

"Neither an agent's license nor the statute under which it is issued defines an agent's authority. A statute requiring every insurance company licensed to do business in the state to obtain from the superintendent of insurance a certificate of authority for every agent writing insurance for it in the state does not prescribe the scope and extent of the authority of such agents but leaves this to be determined by the contract of agency and the company's course in dealing in making contract. The certificate issued is only evidence of the existence of the agency in some form."

■■■ We are persuaded by the language in *Emily, supra,* and from the foregoing quotation from Couch on Insurance that any provisions of the statute requiring an insurance agent to be resident of and licensed in this state cannot serve to relieve Resolute of liability on the forfeiture of the bonds in this case.

VI. We are next urged by appellant to determine trial court erred in holding Resolute liable for the forfeiture of the bonds since the defendant Sellers was serving a sentence on a prior conviction at the time of the hearing on the motion to quash the bonds.

Resolute argues that since Sellers was imprisoned in another state at the time the trial court heard and disposed of this case it should not be liable on the forfeiture proceedings. The State, on the other hand, suggests that since Resolute did not establish that the arrest, apprehension or imprisonment of Sellers in the other state did not take place before the forfeiture of the bonds that defendant is still liable.

In *State v. Shell,* 242 Iowa 260, 265, 45 N.W.2d 851, 854, in passing upon the obligation undertaken by a surety when a bond is executed for a criminal defendant, we said:

"The very essence of the obligation of sureties on a bail bond is that they will produce the accused in open court when his presence is required, in accordance with the terms of the bond. *State v. Hamilton,* 196 Iowa 998, 1002, 192 N.W. 838, 839; *State v. Arioso,* 207 Iowa 1109,

1113, 224 N.W. 56; *State v. Clark,* 234 Iowa 338, 341, 11 N.W.2d 722, 724; *State v. Benedict,* 234 Iowa 1178, 1182, 15 N.W.2d 248, 250.

"By executing the bond appellants secured Shell's release from the sheriff's custody and assumed responsibility for his appearance in court when required."

In *State v. Clark,* 234 Iowa 338, 346, 11 N.W.2d 722, 726, we said:

"Thus it will be observed that the law requires sureties to make a showing of certain things in order to justify the court in affording them relief from their undertaking to produce the principal when his case is reached for trial. The cited case further holds that even had such showing been made, still it is the court who passes upon the matters in issue, and to use the language of the case, under certain showing 'the court might' afford relief sought by the sureties."

■■■ *Shell* and *Clarke, supra,* suggests that under the law of this jurisdiction a surety is responsible for the appearance of a defendant at the date for trial and the responsibility is placed on the surety to know the defendant's whereabouts before the time set for appearance. In situations where sureties seek to set aside judgments of forfeiture by attempting to excuse failure to produce a defendant at the time set for trial, a trial court may grant relief. In other words, the trial court has the discretion to afford relief to the surety, but is not bound to do so. See *State v. Shell, supra.*

VII. On the whole record we conclude the defendant has made no showing entitling it to the relief sought. Resolute made no showing it attempted to procure the presence of Sellers on the trial dates set by the court in keeping with the conditions of its bonds. The simple fact that Sellers was incarcerated in another state does not relieve Resolute on its liability for the forfeiture of its bonds since the surety's obligation under the bond is to assure the presence of the defendant at the date set for trial. See *State v. Shell, supra; State v. Clark, supra; State v. Merrihew,* 47 Iowa

112 (1877). Resolute did not produce Sellers at the designated times set for trial in either case. As the result of such failure, the fact of Sellers' incarceration in another state does not relieve Resolute of liability on its bonds.

We find no error in the record. Trial court's judgment against Resolute is affirmed since Wilson had apparent authority to execute the bonds and Resolute has shown no mitigating factors in order to obtain the relief from the forfeiture judgment.

AFFIRMED.

MOORE, C. J., and LeGRAND, HARRIS and McCORMICK, JJ., concur.

UHLENHOPP, MASON and RAWLINGS, JJ., dissent.

REYNOLDSON, J., takes no part.

UHLENHOPP, Justice (dissenting).

The record makes clear that Wilson did not have actual authority, either express or implied, to post the bonds on Resolute's behalf. As to apparent authority, the events are so bizarre surrounding the refusal of Resolute's local agent to post the bonds, and the subsequent posting of them by Wilson, that I would hold the clerk did not act reasonably in accepting the bonds. "Apparent authority exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized." Restatement, Agency 2d § 8, Comment c.

I would reverse.

MASON and RAWLINGS, JJ., join in this dissent.