Jay GUNDERSON, Roslyn Gunderson, et al., Plaintiffs,

v.

ADM INVESTOR SERVICES, INC., et al., Defendants.

Gary Hoover, Marilyn Hoover, et al., Plaintiffs,

v.

ADM Investor Services, Inc., et al., Defendants.

Nos. C96–3148–MWB, C96–3151–MWB.

United States District Court,
N.D. Iowa,
Central Division.

March 22, 1999.

tiffs' subsequent amending of their complaint after each prior ruling, the pleadings in this longstanding case have become reminiscent of Prometheus' liver.[1] The motion to dismiss currently before the court requires the court to determine, *inter alia,* if the plaintiff grain producers have, on their third attempt, improved their allegations sufficiently to withstand a motion to dismiss. Specifically, the court is called upon here to ascertain whether plaintiffs have pleaded agency with sufficient specificity.

Joel J. Bellows, Laurel G. Bellows, Nicholas P. Iavarone, Christopher L. Gallinari, Bellows & Bellows, Chicago, IL, for plaintiffs.

Margaret M. Prahl, Heidman, Redmond, Fredregill, Patterson, Schatz & Plaza, L.L.P., Sioux City, IA, Timothy C. Klenk, Richard J. Rappaport, Amy B. Manning, Ross & Hardies, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT ADM INVESTOR SERVICES, INC.'S MOTION TO DISMISS

BENNETT, District Judge.

Following this court's granting, in part, of two prior motions to dismiss and plain-

## I. INTRODUCTION

This case arises from hedge-to-arrive contracts ("HTAs"), contracts for the sale and purchase of grain, that were entered into by grain producers and grain elevators. On June 14, 1996, case No. C96–3148–MWB (*Gunderson v. ADM Investor Services, Inc.,* (N.D. Iowa 1999)), was filed in the United States District Court for the Northern District of Illinois. Plaintiffs in *Gunderson* are a group of grain producers seeking declaratory judgment and other relief as described in greater detail below.[2] Plaintiffs alleged, *inter alia,* that defendants engaged in the promotion and marketing of HTAs in violation of the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.*[3]

---

1. For stealing fire from the heavens and giving it to human beings, Prometheus was chained to a mountain and daily had his liver pecked out by an eagle, only to have the organ grow back overnight and be devoured again the next morning. *See* BULFINCH'S MYTHOLOGY 717 (Richard P. Martin, ed.1991).

2. The following individuals and entities were named as plaintiffs in the original complaint in *Gunderson:* Jay Gunderson and. Roslyn Gunderson; Dan Abels; Agcel, Inc.; Asa–Brandt, Inc. a/k/a Asa–Brandt Partnership; Philip Asa; Keith Brandt; Robert Becker; Les Beekman; Ron Berschman d/b/a Phoenix Farms; Steve Berschman; SJMC, Corp.; Dennis Cink; Daryl Cushman; Davids Farms, Inc.; Duane Davids; Dale Kramersmeier and Diana Kramersmeier; Daniel DeWaard; Duane DeWaard; Laurence Doden; M & J

Ennen Farms, Inc.; Ronny Ennen; Beverly Everett; Richard Gardner; Jerry Giesking; Rande Giesking; David Gerber; Hamilton County Land Corp.; Bruce A. Heetland; Heidecker Farms, Inc.; Steve Heyer; James L. Hofbauer; Ted Hoover; Janice Hoover; Jerry D. Johnson; Junkmeier Farms, Inc.; Ray Lichter; Tom Lichter; Lichter Brothers; Bradley Loucks; Bruce Meinders; Dale Meinders and Garry Meinders d/b/a Meinders Brothers; J & K Oftedahl, Inc.; John Oftedahl; Edward A. Otis; Jim Otis; Pitkin Farms, Ltd.; Jeff Pitkin; Sandale Farms, Inc.; Ronald Schmidt; Debra Schmidt; Schutjer Bros., Inc. f/k/a Schutjer Brothers; Dennis Schutjer; Reginald Schutjer; Wendell Schutjer; Steve Shortenhaus; Shawn Thomsen; Bill Walstead; Joyce Walstead and Cecil Welhousen.

Also on June 14, 1996, case No. C96–3151–MWB (*Hoover*), which likewise seeks declaratory judgment and other relief, was filed in the United States District Court for the Northern District of Illinois by a second group of grain producers.[4] Both the original complaints in *Gunderson* and *Hoover* asserted the same thirteen claims for relief.[5]

All of the grain producers will be referred to herein collectively as the Producers. The defendants will be referred to collectively as the defendants, unless otherwise indicated. Defendants Farmers Co-op, Titonka, Buffalo Center, FCS, West Bend, FCE, Bode Co-op, and Cylinder Co-op will be referred to collectively as the Grain Elevators.

On September 25, 1996, the Honorable Suzanne B. Conlon, United States District Court Judge for the Northern District of Illinois transferred *Gunderson* to the Northern District of Iowa. On October 3, 1996, the Honorable James H. Alesia, United States District Court Judge for the Northern District of Illinois, transferred *Hoover* to the Northern District of Iowa.

Defendants ADM and the Grain Elevators subsequently moved for dismissal of the Producers' claims on a number of grounds. On April 17, 1997, the court entered its ruling on defendants' motions to dismiss and found, *inter alia,* that the Producers' CEA fraud claims had not been pleaded with sufficient particularity. The court also concluded that it did not need to consider at that time defendants' various

---

**3.** Named as defendants in the original *Gunderson* complaint were: ADM Investor Services, Inc., ("ADM") a futures commissions merchant registered with the Commodity Futures Traders Commissions ("CFTC"); FAC–MARC, Inc. ("FAC–MARC"), a commodity trading advisor registered with the CFTC; Agri–Plan, Inc., ("Agri–Plan") and Competitive Strategies for Agriculture, Ltd. ("CSA"), both registered with the CFTC as introducing brokers of ADM; Farmers Cooperative Company ("Farmers Co-op"); Farmers Cooperative Elevator d/b/a Titonka Farmers Cooperative ("Titonka"); Farmers Cooperative Elevator of Buffalo Center, Iowa ("Buffalo Center"); The Farmers Co–Operative Society ("FCS"); West Bend Elevator Company ("West Bend"); Farmers Cooperative Elevator, Woden, Iowa ("FCE"); Bode Cooperative ("Bode Co-op"); Cylinder Cooperative Elevator Company ("Cylinder Co-op") and Cooperative Grain & Product Company ("Cooperative Grain"). Defendants Farmers Co-op, Titonka, Buffalo Center, FCS, West Bend, FCE, Bode Co-op, Cylinder Co-op and Cooperative Grain are all Iowa grain elevators.

**4.** The following grain producers were named as plaintiffs in the original *Hoover* complaint: Gary Hoover and Marilyn Hoover; Ronald L. Broderson; Edward Noonan; Noonan Farms, Inc.; John Olson and Philip Olson d/b/a Olson Farm; and Clarence Miller and Christian Miller d/b/a C & C Miller Farms. The following entities were named as defendants in the original *Hoover* complaint: ADM; FAC–MARC; Agri–Plan; CSA; Titonka; Buffalo Center; West Bend and FCE.

**5.** Both the original complaints in *Gunderson* and *Hoover* contained the following claims: Count I alleges a RICO violation, under 18 U.S.C. § 1962(d), by ADM; Count II alleges a RICO violation, under 18 U.S.C. § 1962(d), by ADM, FAC–MARC, Agri–Plan, and CSA; Count III alleges a RICO violation, under 18 U.S.C. § 1962(a), by ADM, FAC–MARC, Agri–Plan, and CSA; Count IV alleges fraud in violation of § 4b of the CEA, 7 U.S.C. § 6b, against ADM and CSA; Count V alleges that the HTAs are illegal because they violate § 4(a) and 4(d) of the CEA, 7 U.S.C. § 6(a) and 6(d). Count VI seeks declaratory judgment of the rights of the parties to the HTAs, a declaration that the HTAs are illegal, void, and unenforceable, because they violate § 4(a)–(c) of the CEA, 7 U.S.C. § 6(a)–(c), § 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), and § 3(a)(10) of the Securities Act of 1934, 15 U.S.C. § 78c(a)(10); Count VII alleges fraud in violation the Illinois Consumer Fraud and Deceptive Trade Practices Act ("IDTPA"), 815 ILCS 505/2(5), against ADM; Count VIII alleges a state-law claim for rescission or cancellation of the contracts on the ground of fraudulent misrepresentations; Count IX alleges a state-law claim for breach of fiduciary duty against ADM and CSA; Count X alleges a state-law claim for breach of fiduciary duty against defendant grain elevators; Count XI alleges a state-law claim of fraudulent misrepresentation against ADM, FAC–MARC, Agri–Plan, and CSA. Count XII alleges a state-law claim for breach of contract against the defendant Grain Elevators. Count XIII alleges a state-law claim for negligence against the defendant Grain Elevators.

challenges, pursuant to Federal Rule of Civil Procedure 12(b)(6), to the adequacy of other claims asserted by the Producers, because repleading of the fraud claims, either by amendment or by refiling, was necessary in both cases. The court therefore granted defendants' motions to dismiss in each case to the extent that it found the claims of fraud inadequately pleaded under Federal Rules of Civil Procedure 9(b) and 12(b)(6). The Producers were directed to file an amended complaint adequately pleading fraud pursuant to Federal Rule of Civil Procedure 9(b). The court further held that such an amended complaint might also rectify any inadequacies perceived in the pleading of other claims, and therefore the Producers would be permitted to replead each count.

On May 20, 1997, the court consolidated *Gunderson* and *Hoover.* On June 10, 1997, the Producers filed their First Amended Complaint in the consolidated case.[6] The First Amended Complaint contained fifteen claims.[7] Defendant ADM and the Grain Elevators again sought the dismissal of all claims asserted against them in the First Amended Complaint. Among the grounds for dismissal asserted by defendants was the argument that the

Producers had again failed to plead fraud with the particularity required by Federal Rules of Civil Procedure 9(b). On March 31, 1998, the court entered its ruling on defendants' motions to dismiss and again found, *inter alia,* that the Producers' CEA fraud claims had not been pleaded with sufficient particularity. The court further concluded that it did not need to consider at that time defendants' remaining challenges, pursuant to Federal Rule of Civil Procedure 12(b)(6), to the adequacy of other claims asserted by the Producers, because repleading of the fraud claims, either by amendment or by refiling, was necessary in both cases. The court therefore again granted defendants' motions to dismiss in each case to the extent that it found the claims of fraud inadequately pleaded under Federal Rule of Civil Procedure 9(b) and 12(b)(6). The Producers were directed to file a second amended complaint adequately pleading fraud pursuant to Federal Rule of Civil Procedure 9(b).

On May 28, 1998, the Producers filed their Second Amended Complaint in the consolidated case.[8] The Second Amended Complaint asserts the following fifteen

---

6. All defendants named in the original complaint, except Cooperative Grain, were again named as defendants in the First Amended Complaint.

7. The First Amended Complaint contained the following fifteen claims: Counts I and II alleged violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), under 18 U.S.C. § 1962(c), by ADM, CSA, FAC–MARC, and Agri–Plan; Count III alleged a RICO violation, under 18 U.S.C. § 1962(c), by Titonka; Count IV alleged a RICO violation, under 18 U.S.C. § 1962(c), by ADM; Count V alleged fraud in violation of § 4b of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6b, against ADM and CSA; Count VI alleged that the HTAs are illegal because they violate § 4(a) and 4(d) of the CEA, 7 U.S.C. § 6(a) and 6(c); Count VII sought declaratory judgment of the rights of the parties to the HTAs, a declaration that the HTAs are illegal, void, and unenforceable, because they violate § 4(a)–(c) of the CEA, 7 U.S.C. § 6(a)–(c), § 2(1) of the Securities Act of 1933, 15 U.S.C.

§ 77b(1), and § 3(a)(10) of the Securities Act of 1934, 15 U.S.C. § 78c(a)(10); Count VIII alleged a violation of the CEA, 7 U.S.C. § 6d, by the defendant grain elevators; Count IX alleged a violation of the CEA, 7 U.S.C. § 6o(1), by Titonka, FCE, Bode Co-op, Buffalo Center, West Bend, Cylinder Co-op, FCS and Farmer's Co-op; Count X alleges a state-law claim for recission of the HTA contracts against defendant Grain Elevators; Count XI alleges a state-law claim of breach of fiduciary duty against ADM, FAC–MARC, Agri–Plan, and CSA; Count XII alleges a state-law claim for breach of fiduciary duty against the defendant Grain Elevators; Count XIII alleges a state-law claim of fraudulent misrepresentation against ADM, FAC–MARC, Agri–Plan, CSA and Titonka; Count XIV alleges a state-law claim for breach of contract against the defendant Grain Elevators; Count XV alleges a state-law claim for negligence against the defendant Grain Elevators.

8. All defendants named in the First Amended Complaint are again named as defendants in the Second Amended Complaint.

claims: Counts I and II allege violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), under 18 U.S.C. § 1962(c), by ADM, CSA, FAC–MARC, and Agri–Plan; Count III alleges a RICO violation, under 18 U.S.C. § 1962(c), by Titonka; Count IV alleges a RICO violation, under 18 U.S.C. § 1962(c), by ADM; Count V alleges fraud in violation of § 4b of the Commodity Exchange Act ("CEA"), 7 U.S.C. § 6b, against ADM and CSA; Count VI alleges that the HTAs are illegal because they violate § 4(a) and 4(d) of the CEA, 7 U.S.C. § 6(a) and 6(c); Count VII seeks declaratory judgment of the rights of the parties to the HTAs, a declaration that the HTAs are illegal, void, and unenforceable, because they violate § 4(a)–(c) of the CEA, 7 U.S.C. § 6(a)–(c), § 2(1) of the Securities Act of 1933, 15 U.S.C. § 77b(1), and § 3(a)(10) of the Securities Act of 1934, 15 U.S.C. § 78c(a)(10); Count VIII alleges a violation of the CEA, 7 U.S.C. § 6d, by the defendant grain elevators; Count IX alleges a violation of the CEA, 7 U.S.C. § 6o(1), by Titonka, FCE, Bode Co-op, Buffalo Center, West Bend, Cylinder Co-op, FCS and Farmer's Co-op; Count X alleges a state-law claim for recission of the HTA contracts against defendant Grain Elevators; Count XI alleges a state-law claim of breach of fiduciary duty against ADM, FAC–MARC, Agri–Plan, and CSA; Count XII alleges a state-law claim for breach of fiduciary duty against the defendant Grain Elevators; Count XIII alleges a state-law claim of fraudulent misrepresentation against ADM, FAC–MARC, Agri–Plan, CSA and Titonka; Count XIV alleges a state-law claim for breach of contract against the defendant Grain Elevators; Count XV alleges a state-law claim for negligence against the defendant Grain Elevators.

Defendant ADM has again moved to dismiss all claims asserted against it in the Second Amended Complaint.[9] Among the grounds for dismissal asserted by defendant ADM is the argument that the Producers have failed to plead an agency relationship between ADM and any other defendant which would give rise to a claim against ADM.

## II. FACTUAL BACKGROUND

The Producers allege that they are grain producers. Defendant ADM is alleged to be registered with the Commodity Futures Traders Commission ("CFTC") as a Futures Commissions Merchant ("FCM"). Defendant FAC–MARC is registered with the CFTC as a Commodity Trading Advisor ("CTA"). Defendants Agri–Plan and CSA are registered with the CFTC as Introducing Brokers ("IB"). Defendants Farmers Co-op, Titonka, Buffalo Center, FCS, West Bend, FCE, Bode Co-op, and Cylinder Co-op are all alleged to be grain elevators.

The Producers allege that FAC–MARC, Agri–Plan, CSA, and Titonka were acting as the actual and apparent agents of ADM. The Producers further aver that the actions and omissions of these entities and their respective employees were made within the scope of that agency relationship and with the intent of furthering ADM's interests.

The Producers aver that at some time prior to February 1993, ADM entered into a conspiracy with the following: FAC–MARC; Agri–Plan; FAC–MARC and Agri–Plan officers including Dennis Hofmeister, Perry Aalgaard, and Steve Logemann; CSA and its officers including Lee Amundson; A/C Trading 2000 and its general partners, James Gerlach, Alvin Fischbach and Chalmer Miller; A/C Trading Co. and its general partners, James Gerlach, and Chalmer Miller; Agro Systems Corporation; Brighton Commodities, Inc.; and, Titonka and its manager, Duane Toenges. The alleged conspirators intended to evade the rules and regulations of the CFTC and the Chicago Board of Trade ("CBOT") through the marketing of the

---

**9.** Defendant Grain Elevators have also again filed a motion to dismiss all claims asserted against them in the Second Amended Complaint. Defendant Grain Elevators' motion will be considered by the court in a separate order.

HTAs, and in doing so, to engage in mail fraud, wire fraud, and commodities fraud.

## III. LEGAL ANALYSIS

### A. Standards For Motions To Dismiss

The present motion to dismiss involves the interrelationship of two sets of standards: the standards for dismissal for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), and the standards for pleading fraud with particularity stated in Federal Rule of Civil Procedure 9(b). This court has considered in some detail the standards applicable to motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) in a number of published decisions. *See, e.g., Adler v. I & M Rail Link, L.L.C.,* 13 F.Supp.2d 912, 917 (N.D.Iowa 1998); *Terra Indus., Inc. v. Commonwealth Ins. Co. of Am.,* 990 F.Supp. 679, 682 (N.D.Iowa 1997); *Leiberkneckt v. Bridgestone/Firestone, Inc.,* 980 F.Supp. 300, 302 (N.D.Iowa 1997); *North Cent. F.S., Inc. v. Brown,* 951 F.Supp. 1383, 1404 (N.D.Iowa 1996); *Powell v. Tordoff,* 911 F.Supp. 1184, 1188 (N.D.Iowa 1995); *Quality Refrigerated Servs., Inc. v. City of Spencer,* 908 F.Supp. 1471, 1489 (N.D.Iowa 1995); *Reynolds v. Condon,* 908 F.Supp. 1494, 1502 (N.D.Iowa 1995); *Dahl v. Kanawha Inv. Holding Co.,* 161 F.R.D. 673, 681 (N.D.Iowa 1995). Likewise, the court has previously reviewed the specific pleading requirements of Federal Rule of Civil Procedure 9(b) in several published decisions. *See, e.g., Brown v. North Cent. F.S., Inc.,* 987 F.Supp. 1150, 1155 (N.D.Iowa 1997); *Brown v. North Cent. F.S., Inc.,* 173 F.R.D. 658, 664 (N.D.Iowa 1997); *Brown,* 951 F.Supp. at 1404; *De Wit v. Firstar Corp.,* 879 F.Supp. 947, 970 (N.D.Iowa 1995); Indeed, in this case, the court reviewed these sets of standards in some detail in each of its prior two orders regarding defendant ADM's previous motions to dismiss. Because the court does not find that intervening decisions have altered these standards in any way, it will not repeat the discussions of those standards here.

### B. Pleading Of Agency Relationships

The Producers' claims are all premised on allegations that certain representations were made to them regarding HTAs. However, the Second Amended Complaint contains no allegations that ADM employees ever promoted the HTAs at issue in this case nor that ADM ever made any representations or solicitations to any of the Producers. Rather, the Producers have alleged that other named defendants, acting as agents of ADM, made representations and solicitations to the Producers regarding the HTAs "on behalf of" ADM. ADM, however, asserts that the Producers have failed to plead that ADM granted anyone actual or apparent authority to make representations and solicitations to the Producers regarding the HTAs on its behalf. ADM contends that this deficiency in the Producers' pleadings is fatal to their claims against it.

A number of federal district courts have held that " '[a] complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusions of agency.' " *Williams v. Ford Motor Co.,* 990 F.Supp. 551, 554 (N.D.Ill.1997) (quoting *Connick v. Suzuki,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584, 592 (1996)); *accord Lachmund v. ADM Investor Servs., Inc.,* 26 F.Supp.2d 1107, 1114 (N.D.Ind.1998) (holding that legal conclusion that partner in business was the agent of another company was insufficient allegation of agency); *MJ & Partners Restaurant Ltd. Partnership v. Zadikoff,* 10 F.Supp.2d 922, 931 (N.D.Ill.1998) ("While the existence and extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an agency relationship existed in order for his complaint to survive a Rule 12(b)(6) motion to dismiss."); *Cohen v. Standard Bank Inv. Corp. Ltd.,* 1998 WL 782024, at *6 (S.D.N.Y. Nov.6, 1998) (holding that party alleging existence of agency relationship must plead sufficient facts to establish an agency relationship); *Allied*

*Prods. Corp. v. Electric & Gas Tech., Inc.,* No. 97 C 5256, 1998 WL 173305, at *2 (N.D.Ill. Apr.8,1998) ("Mere legal conclusions are insufficient to state a claim based on agency. Instead, a claimant must plead facts that would support a finding that the alleged agents had actual or apparent authority to act on behalf of another.") (citation omitted); *Balderos v. City Chevrolet, Buick & Geo, Inc.,* No. 97C2084, 1998 WL 155912, at *6–7, RICO Bus.Disp. Guide 9518 (N.D.Ill. Mar. 31, 1998) (holding that pleading containing conclusory allegations of agency was insufficient); *Cumis Ins. Soc'y v. Peters,* 983 F.Supp. 787, 796 (N.D.Ill.1997) ("While the existence and extent of the agency relationship is a question of fact, the plaintiff must sufficiently allege that an agency relationship existed in order for his complaint to survive a Rule 12(b)(6) motion to dismiss."); *Peterson v. H & R Block Tax Servs., Inc.,* 971 F.Supp. 1204, 1213 (N.D.Ill.1997) ("Although the trier of fact most often answers whether particular facts giving rise to an agency relationship exist, 'a plaintiff must still plead facts, which, if proved, could establish the existence of an agency relationship.'") (quoting *Knapp v. Hill,* 276 Ill. App.3d 376, 212 Ill.Dec. 723, 657 N.E.2d 1068, 1071 (1995)); *Prochaska & Assocs. v. Merrill Lynch Pierce Fenner & Smith, Inc.,* 798 F.Supp. 1427, 1432 (D.Neb.1992) (holding that "bald" allegation of agency "is by itself a mere legal conclusion and is therefore insufficient to withstand a motion to dismiss.").

■ The court notes that the pleading of allegations of agency must also meet the requirements of Federal Rule of Civil Procedure 9(b) where the allegations of fraud are based on a claim of agency. *See Kolbeck v. LIT Am., Inc.,* 923 F.Supp. 557, 569 (S.D.N.Y.1996), *aff'd,* 152 F.3d 918 (2d Cir. 1998) (unpublished table opinion); *American Credit Indem. Co. v. HCG Fin. Servs., Inc.,* 1990 WL 77992, at *4 (N.D.Ill. June 1, 1990); *Pershing Div. of Donaldson, Lufkin & Jenrette Secs. Corp. v. Sirmer,* 1989 WL 165155, at *6–7 (N.D.Ill.Dec.27, 1989). As the court in *Kolbeck* explained:

In a case involving multiple defendants, Rule 9(b) mandates that the complaint inform each defendant of his alleged role in the deception. Broad allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b). *Landy v. Mitchell Petroleum Tech. Corp.,* 734 F.Supp. 608, 620–21 (S.D.N.Y. 1990).

The requirement of precision applies equally when the goal is to hold defendants vicariously liable for the fraud of another and when the agency relationship itself allegedly is part of the fraud. When an implied agency relationship is allegedly part of the fraud, "the circumstances constituting the fraud" on the part of the purported principal include both the facts constituting the underlying fraud and the facts establishing the agency relationship.

*Kolbeck,* 923 F.Supp. at 569.

■ In light of these requirements, the court turns to the issue of whether the Producers have alleged facts showing the existence of an agency relationship between ADM and the other defendants. An agency relationship may be established in three ways under Iowa law: an agent may possess express, implied or apparent authority. *See Gatzemeyer v. Vogel,* 544 F.2d 988, 992 (8th Cir.1976); *Mayrath Co. v. Helgeson,* 258 Iowa 543, 139 N.W.2d 303, 306 (1966); *see also Thorp Credit, Inc. v. Wuchter,* 412 N.W.2d 641, 646 (Iowa Ct.App.1987). An agent whose authority has been granted either expressly or by implication possesses actual authority to act on behalf of the principal. *Grismore v. Consolidated Prods. Co.,* 232 Iowa 328, 5 N.W.2d 646, 651 (1942); *see State v. Sellers,* 258 N.W.2d 292, 297 (Iowa 1977) ("Ordinarily, an agent has implied authority to act for his principal to accomplish the purposes of grants of express authority and

may not extend actual authority unreasonably beyond the authority expressly granted."). On the other hand, apparent authority is that which, although not actually granted, has been knowingly permitted by the principal or which the principal holds the agent out as possessing. *Magnusson Agency v. Public Entity Nat'l Co.—Midwest,* 560 N.W.2d 20, 25 (Iowa 1997); *Helgeson,* 139 N.W.2d at 306; *Hall v. Crow,* 240 Iowa 81, 34 N.W.2d 195, 200 (1948). A determination of an express or implied agency focuses on communications and contacts between the principal and the agent. In describing an actual agency, the Iowa Supreme Court has observed:

> "An agency results from the manifestation of consent by one person, the principal, that another, the agent, shall act on the former's behalf and subject to his control, and consent by the other so to act. \*\*\*
>
> An agency may be proven not only by direct evidence of an agreement between the parties but also by circumstantial evidence, such as their words and conduct, from which the intention to create an agency may be fairly implied."

*Walnut Hills Farms, Inc. v. Farmers Coop. Co.,* 244 N.W.2d 778, 781 (Iowa 1976) (quoting *Martin v. Jaekel,* 188 N.W.2d 331, 333–34 (Iowa 1971)).

Creation of apparent authority, on the other hand, focuses on the effect the principal's conduct or communications has on a third party. *Magnusson Agency,* 560 N.W.2d at 25; *Waukon Auto Supply v. Farmers & Merchants Sav. Bank,* 440 N.W.2d 844, 847 (Iowa 1989); *Sellers,* 258 N.W.2d at 297; *Grismore,* 5 N.W.2d at 651. As the Iowa Supreme Court pointed out in *Sellers:*

> "Stated inclusively, then, the rule is that if a principal acts or conducts his business either intentionally, or through negligence, or fails to disapprove of the agent's act or course of action so as to lead the public to believe that his agent possesses authority to act or contract in the name of the principal, such principal is bound by the acts of the agent within the scope of his apparent authority as to

any person who, upon the faith of such holding out, believes, and has reasonable ground to believe, that the agent has such authority, and in good faith deals with him."

*Sellers,* 258 N.W.2d at 297 (quoting 3 Am. Jur.2d, *Agency,* § 74 at 477 (1973)).

■ In the present case, the complaint does not sufficiently allege that an agency relationship existed between ADM and the other defendants. The Producers have failed to allege an act or statement by ADM granting any of the other defendants authority which would permit them to make statements or representations, on ADM's behalf, regarding the HTAs. Specifically, the Producers have failed to allege that ADM gave anyone actual authority to make representations or statements regarding the HTAs on its behalf. Similarly, the Producers have not alleged any acts on the part of ADM that would indicate to a third party that any of the other defendants had ADM's grant of authority to promote the HTAs.

■ The only factual allegation of note is that defendants Agri–Plan and CSA are both registered with the CFTC as IB of ADM. However, the Producers have made no allegations that Agri–Plan and CSA's respective roles as ADM IBs included the solicitation of HTAs. This is critical because courts have declined to find IB status, standing alone, sufficient to support the legal conclusion that an IB is an agent of a FCM such as ADM. *See Lachmund,* 26 F.Supp. 2d at 1114 (holding that FCM's guarantee agreements with its IBs are not indicative of an agency relationship); *Katz v. Financial Clearing & Servs. Corp.,* 794 F.Supp. 88, 94 (S.D.N.Y.1992) ("An introducing broker is not acting as an agent of the clearing broker when the introducing broker makes fraudulent misrepresentations to its customers."). The recent decision in *Lachmund* is particularly instructive since it involves nearly identical claims to those presented here. The district court in *Lachmund* observed that:

The CFTC has declined to find that guarantee agreements between IBs and FCMs, without more, are indicative of agency relationships. *See Violette v. First Options of Chicago, Inc.*, No. 95–R128, Comm.Fut.L.Rep. (CCH) ¶ 26,951, 1997 WL 71438, at *3 (CFTC Feb. 20, 1997), ADMIS's Memorandum in Support of Motion to Dismiss, Ex. 12 at *6–*7 ("The Commission has never held that status as a guaranteed IB, standing alone, is sufficient to establish agency."). This is particularly true when the alleged fraudulent activity is undertaken by the IB as a "venture" distinct from its relationship with the FCM. *See Cunningham v. Waters Tan & Co.*, 65 F.3d 1351, 1359 (7th Cir.1995) ("[FCM], by entering into a guarantee agreement with [IB] as an individual, never agreed to guarantee [IB's] other venture as a commodity pool operator—an activity of which [FCM] was never made aware.").

*Lachmund*, 26 F.Supp.2d at 1115.

The court concludes that Agri–Plan and CSA's respective IB status, standing alone, is insufficient to support the legal conclusion that either defendant was an agent of ADM. *See Lachmund*, 26 F.Supp. 2d at 1114; *Katz*, 794 F.Supp. at 94. Because the Second Amended Complaint fails to contain allegations that support the proposition that ADM granted any of the other defendants authority which would permit them to make statements or representations—on ADM's behalf—regarding the HTAs, but instead rests on legal conclusions that other defendants were agents of ADM, the court concludes that the Second Amended Complaint fails to contain sufficient allegations of agency. Accordingly, ADM's motion to dismiss is **granted.**

## IV. CONCLUSION

The court concludes that the Producers' repleaded claims fail to contain sufficient allegations of agency. The court finds that defendant Agri–Plan and defendant CSA's respective IB status, standing alone, is insufficient to support the legal conclusion that either defendant was an agent of ADM. Thus, the Second Amended Com- plaint fails to contain sufficient allegations of agency. Therefore, defendant ADM's motion to dismiss is **granted.**

**IT IS SO ORDERED.**